## COLTON v. GALBRAITH.

1. EQUITABLE CONVERSION.—Land directed by a testator to be sold by his surviving executors after his widow's death and the proceeds distributed, becomes personalty at the death of the widow.

2. WARRANTY—HEIRS—ESTOPPEL.—A widow, who was also life tenant and executrix, and to whom her testator's insolvent estate is largely indebted for advances made by her in course of administration, having no power of sale, conveyed with general warranty a lot of her testator's land, and then died, leaving as her heirs the issue and heirs of their father, her testator. These parties, as heirs of their father, brought action at law to recover this lot of land from their mother's grantee, and it was adjudged that they were entitled to two-thirds part thereof. They then brought action in equity for partition. In this second action *held*, that as their father's estate was insolvent by reason of a large debt due by his estate to their mother, of whose estate these parties were also distributees, and as such liable under their mother's warranty for any deficiency in her grantee's title, the court, to prevent circuity of action, will declare an estoppel and dismiss the complaint.

Before WALLACE, J., Spartanburg, October, 1890.

This was an action by C. M. E. Colton and Pamela C. Fogartie against Mattie G. Galbraith and others, commenced September 24, 1889. The opinion states the case.

*Messrs. S. Wilson* and *Carlisle & Hydrick*, for appellant.

*Mr. H. E. Ravenel*, contra.

March 22, 1892. The opinion of the court was delivered by MR. JUSTICE McGOWAN. It seems that Dr. A. F. Golding, of Laurens County, died some time prior to the late war, leaving what was then deemed to be a handsome estate, consisting largely of negro slaves. He left a will by which, after the payment of his debts, he devised the whole remainder of his estate, real and personal, to his wife, Mrs. C. M. Golding, for life, and after her death the whole of the estate to be sold by his executors, and the proceeds distributed as therein provided. He named three executors, only one of whom, his widow, Mrs. C. M. Golding,

qualified. The slaves were emancipated and the debts turned out to be very large. Mrs. Golding, as executrix, was pressed for payment of the debts, which the personal assets were not sufficient to pay, and she made large advancements for the estate, which, in a proceeding to settle the estate in Laurens County, was established to amount to something over $30,000, for which she had judgment. It further appears that Mrs. Golding, as the sole executrix (although the express power to sell lands was not given to her, but to the executors who might survive her), sold and conveyed several lots of the estate to assist in paying pressing debts, and made application to the court to confirm the titles to two lots thus sold, and with the consent of all parties the prayer was granted. Afterwards, in January, 1878, she sold another lot in Spartanburg to one G. W. H. Legge, which by a chain of title is now held by Mattie G. Galbraith. The deed recited that the sale was made by "authority" of the will of Dr. Golding, contained a warranty, and was signed by Mrs. Golding as "executrix." This is the lot now in controversy.

Mrs. Golding died in 1883, leaving a will of which her daughter, Mrs. Fogartie, qualified as executrix. The will is not in the "Brief," but it appears somewhat vaguely that she bequeathed her estate to her children and grandchildren, believed to be the same persons now claiming the Legge lot, as the heirs at law of Dr. Golding. However that may be, the executrix of Mrs. Golding instituted another proceeding in Laurens, stating that the estate of her father, Dr. Golding, was insolvent and insufficient to pay his debts, and that in her life-time Mrs. Golding had paid of her own means over $30,000 as advances to pay his debts, and that she, as executrix of her mother, was entitled to have the remainder of the lands sold for the payment of the large debt due her, so far as the proceeds of the lands would go. The prayer was granted, and the lands sold under order of the court; and after paying some debts of Mrs. Golding, "the balance of the proceeds to be divided among the legatees of Mrs. Golding." The proceeds amounted to some $6,000, leaving still a considerable balance unpaid upon the large debt due to her as executrix of Mrs. Golding's will.

Soon after the heirs at law of Dr. Golding sued Mrs. Galbraith

for the Legge lot.  Judge Fraser, by consent, decided the case, and holding that it was a law case, and the equitable defence set up "would constitute no valid defence in this action," decided that the plaintiffs, as the heirs at law of Dr. Golding, were entitled to recover two-thirds of the lot, the remaining third (her own distributive share) being well conveyed by Mrs. Golding to the said G. W. H. Legge and those who hold under him. Thereupon the plaintiffs, claiming as the heirs at law of Dr. Golding, and alleging that the testator, Dr. Golding, "had become intestate as to the said Legge lot of land, and that the defendant, Mattie G. Galbraith, is the owner of one-third ($\frac{1}{3}$) of the same," instituted this action in equity against the said Mattie G. Galbraith for partition or sale of the lot, dividing the proceeds of sale according to their respective rights.

The cause was heard by Judge Wallace, who held that Mrs. Galbraith could not claim any interest in the land except the one-third, which she is alleged in the complaint to have, and which was confirmed to her by the decision of Judge Fraser in a former action at law ; and he ordered the lot sold, and out of the proceeds of sale one-third be paid to Mrs. Galbraith, after first paying the costs of the case and expenses of the same, and out of the remainder to pay to Caroline M. E. Colton and Pamela C. Fogartie each two-ninths of the whole, &c., &c.

From this decree the defendant, Mrs. Galbraith, appeals to this court upon the following grounds : I. In holding that appellant cannot claim any interest in the property except one-third ($\frac{1}{3}$) thereof.  II. In directing the premises sold, and the purchaser to be put into possession by the sheriff.  III. In directing that out of the proceeds of sale the plaintiffs be paid each two-ninths, &c.  IV. In ordering all the costs and expenses of the action to be paid out of the aforesaid $\frac{1}{3}$ share of the appellant.  V. In not holding that plaintiffs and the defendants, C. B. Fuller, S. M. Bird, and W. M. Bird, jr., never had in equity any possible interest in the premises, either as heirs at law, devisees, or legatees of Dr. Golding.  VI. Because Dr. Golding's will directed the lot sold "out and out," and under the principle of equitable conversion, it was already personalty, and applicable to the large debt still due the estate of Mrs. Golding, and her

devisees or legatees could not claim the same as against the appellant, who in equity succeeds to all the rights of Mrs. Golding under the deed to Legge. VII. In not holding that plaintiff and other defendants are estopped by Mrs. Golding's warranty deed to Legge from invoking the aid of equity as against appellant. VIII. In not holding that the conveyance to Legge, under which appellant claims, should be sustained and ratified in equity, and her title to said premises confirmed.

There seems to be some confusion in this case. It is certainly novel for the children and grandchildren of an insolvent debtor to claim and recover a lot of land belonging to the debtor, as his heirs at law, leaving a large amount of his debts still unpaid. We do not understand how it can be assumed that Dr. A. F. Golding "became intestate" as to any part of his estate. He left a will, which disposed of his property as follows: "I give, devise, and bequeath the whole of my estate, both real and personal, to my wife during her natural life, and after her death I will and devise that the whole of my estate be sold by my executors, and the proceeds thereof distributed as hereinafter provided," &c. It turned out, however, that the testator was largely insolvent, and the proceeds of all the lands were not sufficient in aid of the personalty to pay the debts; and therefore nothing could pass under his will to the objects of his intended bounty, or descend to his heirs as such, who really had no actual interest in the estate as devisees or heirs. At the death of the widow, when the lands were to be sold, there was no surviving executor to sell them; but, as we suppose, by virtue of the doctrine of equitable conversion, the lands then became personalty. "Lands directed to be converted into money go to the testator's personal representatives, or is included in a residuary bequest of his personal property." 1 Pom. Eq. Jur., § 371. Nor does it make any difference if the lands are never actually sold. *Perry* v. *Logan*, 5 Rich. Eq., 206.

The principal creditor of the estate of Dr. Golding was Mrs. C. M. Golding, his widow, and her executrix, Mrs. Fogartie, made an application to the Court of Equity to have all the lands sold and applied to the large debt which she held as executrix, which application was granted, the lands

sold, and the proceeds directed to be paid to Mrs. Fogartie, in order that they might pass under the will of Mrs. Golding to the legatees therein named; her heirs at law being the same persons who are the nominal heirs at law of Dr. Golding, who could receive nothing from their father's estate, but are the beneficiaries under their mother's will. It must be kept in mind that Mrs. Golding was not only life tenant, but sole qualified executrix of the will of her husband, Dr. Golding. Being pressed for the debts of the estate, she made advances as executrix to a large amount, as before stated, to something over $30,000. Besides, she was induced to sell two lots of her testator, for the purpose of raising money to assist in paying the debts. But as the sale was possibly premature, being made before and not after her death, she made an application to the Court of Equity to confirm the title, which was done on the principle of equity that "regards that done which should have been done."

Afterwards, in 1878, she made in the same way the sale of another lot in Spartanburg (now in contention) to one G. W. H. Legge. The deed was "to him, his heirs and assigns," with warranty "against me and my heirs and all other persons lawfully claiming the same," &c., and was signed "C. M. Golding, executrix." There is no imputation that there was the least want of good faith in the sale; and therefore there is no reason to doubt that if an application had been made at the time, the Court of Equity would have confirmed that sale, as it had already done in reference to the two lots formerly sold. But not long after Mrs. Golding died, and the application was never made. Now the plaintiffs and the defendants, except Mrs. Galbraith, nominal heirs of Dr. Golding, allege that the sale of Mrs. Golding to Legge was premature, irregular, and invalid, in that it was made by her during her life, and not by other executors of Dr. Golding after her death; and claiming that the lot became the "intestate property" of Dr. Golding, instituted this proceeding against Mrs. Galbraith for partition of the lot sold and conveyed to Legge. It seems to be admitted that the sale and conveyance of Mrs. Golding to Legge carried one-third interest, the distributive share of herself in the premises, in the view that it was the intestate property of Dr. Golding.

The question now is, whether the plaintiffs are in equity entitled to the other two-thirds, and to have the premises sold for partition. As we understand it, this involves what has been correctly called "the curious learning of title by estoppel." We suppose there can be no doubt that the covenant of warranty in the deed of conveyance by Mrs. Golding to Legge was binding upon her while living, and is now binding upon her personal representatives, heirs and devisees, at least to the extent of assets · received by them from her estate. This being so, if the plaintiffs were allowed to recover the Legge lot in whole or in part, that would be a breach of Mrs. Golding's covenant of warranty, which they would have to make good, thus involving the necessity of two actions, one by the representatives of Mrs. Golding for the lot, and the other against them for breach of her warranty. As we understand · it, in this state of facts the Court of Equity, in order to prevent a circuity of action, declares an estoppel. Mr. Bigelow, at page 239 of his work on Estoppel, thus states the doctrine: "The policy of the law, it will thus be seen, is to prevent a circuity of action. If the heir, having assets from his father (or, as we suppose, from his mother), the grantor were to be allowed to recover the land which the father (or mother) had conveyed with warranty, though the title had come to him from his mother or from any other collateral source, he would be compelled at once to respond to his father's covenant to the extent of his assets (not exceeding, of course, the value of the land); so that he would be in no better condition in a pecuniary aspect, which alone the law regards, after the litigation than before. The law therefore wisely holds him estopped, or more properly rebutted, from claiming the land. * * * He could not, however, claim the premises as *quasi* heir of the grantor in this or in any other case, for as such a claimant he would be in privity with the grantor, and would be estopped accordingly." See also *Kerngood* v. *Davis*, 21 S. C., 183, 211, as to the estoppel of the Villipigue judgment.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the complaint dismissed.